CENTRAL PASTO VIEJO, INC., Plaintiff and Appellant, *v.* ARTURO APONTE, JR., and ANTONIO GONZÁLEZ, Defendants and Appellees.

No. 3553. Argued June 16, 1925.—Decided March 16, 1926.

*Henry G. Molina* and *González Fagundo & González Fagundo, Jr.,* for the appellant. *Arturo Aponte, C. Travecier* and *Fernando Gallardo* for the appellees.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

Central Pasto Viejo, Inc., brought this action to recover money against Arturo Aponte, Jr., Antonio González and José López del Valle, praying the court to render judgment against the said defendants "individually and as partners doing business under the name of Aponte & González" jointly and severally for the sum of $3,033.24, with interest at the rate of 9 per cent per annum, and the costs. In support of the prayer it was alleged on information and belief that the defendants formed an agricultural partnership under the name of Aponte & González on or before

September 3, 1921, for the purpose of engaging in the planting and cultivation of sugar cane, and that about the third day of September, 1920 (*sic*), the plaintiff at the request of Arturo Aponte, Jr., opened a current account with the said partnership for the planting expenses, the balance sued for being thus originated.

The court rendered judgment against Antonio González for the said sum of $3,033.24, without interest, and dismissed the complaint as against the other defendants, that judgment being the basis of this appeal.

In weighing the evidence the lower court found that the partnership of Aponte & González did not exist and that Arturo Aponte, Jr., had no participation in the opening of a current account in favor of the entity that appears on the plaintiff's books under the name of Aponte & González. On those points the lower court only decided questions of fact, some of which were amply analyzed in the case of *Central Pasto Viejo, Inc.,* v. *Arturo Aponte, Jr.,* 34 P.R.R. 849. We refer to the letters alleged to have been sent to Aponte enclosing statements of accounts and to the conferences that Baragaño and Walker had with the defendant at which other persons of both parties were present. But in particularizing the account sued for in the present action it appears clearly that when the so-called agricultural financing account of Aponte & González was opened at the alleged request of Arturo Aponte, Jr., this defendant was absent from Porto Rico. There is nothing in writing with respect to the contract for agricultural advances and the most important part of the testimony of manager Baragaño by which he attempted to explain the origin of the account and the relation of the defendants among themselves with the plaintiff is as follows:

"This account was opened about the end of August or the beginning of September. González and López del Valle came to the office of the Central and when I arrived both of them were there. The cashier of the Central, Rafael P. Vargas, and the clerk Manuel Santiago were also there, and when I arrived at the office

González told me that they had come to get money for expenses in cultivating sugar cane planted on the Santa Teresa property and Caracolillo, and that Aponte told them that they could borrow some money for the said expenses.

"I told him that I had no order to that effect from Aponte and that no financing contract had been made. He then told me that they were planting cane on the Santa Teresa property and on the Caracolillo to be ground by the Central, and that as it was for a short time the money could be given to be settled and paid for as soon as Aponte returned. I consented to give the money. Aponte did not return until February and in December I called González's attention to the fact that the account was increasing and that there was no financing contract, whereupon he informed me that when Aponte returned he would assume payment of the account.

"Who would assume payment of the account?—González; but he never charged himself to pay for the cane.

"Judge:—Excuse me, what were the words?—González told me that if Aponte should agree upon return from his trip, González would take charge of the account, and he never did, but after Aponte's arrival González called for a weekly advance and I told him that I could not give it to him because I had given him the other money to be paid or a financing contract therefor made after Aponte's arrival. Then he asked me to give him the weekly amount for the last time and that he would not take any more until they had settled the account.

"And when Aponte returned did you have any conversation with him with respect to that account?—Yes, soon after his arrival when I told him about that weekly amount he came to Humacao.

"Who is he?—González, the one who came for the money, and I believe he spoke to me from Aponte's office. . . Attorney Aponte: You believe?—I was spoken to.

"Who spoke to you?—I have the belief that it was Aponte, who told me to give him the last weekly amount.—Attorney Molina:— The question is already asked and answered.

"Why is it that you have that belief?—Because I remember it now. I believe that it was Aponte's voice and it seems to me that he was the one who talked to me about the weekly amount.—Attorney Aponte:—I ask that what he states on belief be stricken out. Witness:—I could not say that it was a personal conversation with Aponte because I would perfectly remember the fact. I think it was over the telephone from his office."

This testimony is rather inconsistent with the complaint wherein it is alleged that the account was opened at the request of Aponte, and, on the other hand, the witness shows some uncertainty in referring to the conversation that he had with Aponte to throw on him, nevertheless, the weight of the responsibility of others and to make him assume *insolidum* the contractual relation. The lower court could not reach that conclusion and its decision was correct.

The questions of fact being disposed of, the only legal point raised by the appellant refers to the ruling of the court below refusing to render judgment on the pleadings.

The appellant contends that as the complaint was sworn to and its allegations had not been specifically denied in the answer filed by the defendants, this is insufficient.

The original complaint was filed on October 6, 1921. After motions to strike, demurrers and a motion for extension of time to answer, the default of the defendants was entered, and on March 3, 1922, judgment against them was rendered. On March 30, 1922, on motion by the defendants, the judgment by default was set aside and the defendants filed their answer. The trial was set for the first time for May 24, 1922, and was continued on the defendants' motion. On December 26, 1922, the plaintiff asked leave to file an amended complaint, the amendment consisting of the bringing in of another defendant, José López del Valle, because after filing the original complaint the plaintiff had been informed that he also had been interested in or was one of the partners of Aponte, González & Co., and in adding to the account sued on the advance of $112.35 made to Aponte & Co., because it was omitted "as a result of facts established in another litigation before this court," as alleged by the plaintiff in its motion. The complaint thus amended was filed and after being demurred to for lack of cause of action, the defendants, on February 27, 1923, answered the complaint in the same or similar terms used in answering the original complaint.

194

On July 3, 1923, the motion for judgment on the pleadings was filed. The hearing of the case had been already set for July 5, 1923, and at the opening of the trial on the said date the lower court overruled the plaintiff's motion.

Under the facts of this case, and the complaint being based on the claim of a balance of an agricultural financing account for the planting of sugar cane, and given the nature of the evidence produced which referred to the presentation of certain statements of account and to their alleged remittance to defendant Arturo Aponte, on whom all the responsibility was made to fall, which was amply discussed in the particulars of that evidence, as has been indicated above, and that the real issue between the parties in this case was decided without surprise or want of preparation on the part of the plaintiff, it seemed very obvious that the defendants could have amended their answer and consequently the ruling of the court refusing to render judgment on the pleadings in accordance with the provision of section 142 of the Code of Civil Procedure was not prejudicial to the plaintiff's claim.

For the foregoing reasons the judgment appealed from must be affirmed.